UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal No. 21-10350-LTS |
| | ) |
| HARRY TAM et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

REFERRAL OF ATTORNEY CHRISTOPHER MALCOLM
FOR DISCIPLINARY PROCEEDINGS

October 17, 2024

SOROKIN, J.

This is a referral of Attorney Christopher Malcolm for disciplinary proceedings pursuant to Local Rule 83.6.5. The alleged misconduct occurred during Attorney Malcolm's representation of Defendant Harry Tam in the above-captioned criminal case. These allegations came to light, first, in a motion to disqualify Attorney Malcolm, which the Court allowed in March 2023, and, second, in filings related to Tam's sentencing, which occurred in April 2024. At the conclusion of Tam's criminal case, the undersigned screened the allegations. After a pair of hearings with Attorney Malcolm, along with consideration of his written submissions, the Court finds that the "allegations of attorney misconduct are reasonably plausible and potentially serious," L.R. 83.6.5(b), and thus the Court makes this referral.

The Court seals certain portions of this referral order because they discuss either confidential client information or confidential personal information concerning Attorney Malcolm. The Clerk shall provide the Chief Judge of this Court, the Judge to whom this matter

is assigned, and Attorney Malcolm with unredacted copies of this Order.[1]  No person shall disclose the information sealed herein absent permission of the undersigned, the Chief Judge, or the assigned Judge, except that Attorney Malcolm may disclose such information to a lawyer representing him on the referred violations.

As explained in detail below, this referral arises broadly from four potentially serious ethical violations committed by Attorney Malcolm.  First, Attorney Malcolm plausibly violated Massachusetts Rules of Professional Conduct 1.7 and 1.9 by representing Tam notwithstanding conflicts of interest arising from his prior representation of two of Tam's co-defendants, Henry Vuong and Marcus Leyden.[2]  Second, Attorney Malcolm plausibly violated Massachusetts Rule 1.6 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Third, Attorney Malcolm plausibly violated Massachusetts Rule 1.8(f) by accepting from Tam the payment of fees for Vuong's representation without complying with the required procedures. Fourth, Attorney Malcolm plausibly violated Massachusetts Rule 3.3 by knowingly making false statements to the Court when he stated that he had obtained consent to his representation of Tam from all affected clients and when he presented potentially inauthentic client fee letters to the



---

[1] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

[2] The Massachusetts Rules of Professional Conduct are the subject of much of this order.  When referring to them in text, the Court will use the terms "Massachusetts Rules" and "Rules."  In citation sentences, the Court will cite the Rules as "RPC."

Court.  Additionally, Attorney Malcolm's conduct in the course of the disciplinary-referral screening process, as well as his conduct in two other recent criminal cases in which he has appeared in this District, adds to the Court's concerns regarding his discharge of his duties as an attorney.

I.     BACKGROUND

Around February 2020, federal agents commenced an investigation into drug trafficking which would come to focus on Harry Tam, Henry Vuong, Marcus Leyden, and several other co-conspirators.  Presentence Report ("PSR") at 6.  The investigation initially resulted in separate state charges against Vuong and Leyden.  Attorney Malcolm represented Vuong on his state charges from September 2020 until at least November 2021.  Doc. No. 243 at 2; Doc. Nos. 243-1 to -3; Doc. No. 712 at 2.  But see Doc. No. 243 at 3 (suggesting the representation lasted until February 2022).[3]  He also represented Leyden on his state charges from October 2020 to January 2022.  Doc. Nos. 653-2 to -3; Doc. No. 712 at 2.  During this time, in May 2021, Tam was arrested on an unrelated state charge, on which Attorney Malcolm represented him as well.  Doc. No. 657 at 5; Doc. No. 712 at 1–2.

On December 7, 2021, a grand jury returned a sealed indictment ("the Indictment") naming ten defendants, including Tam, Vuong, and Leyden.  Doc. No. 1.  Count I of the Indictment charged those three men and others with a conspiracy to distribute methamphetamine spanning the period from March 2020 to May 2021.  Doc. No. 1 at 2.  Count III charged Vuong with distribution of and possession with intent to distribute methamphetamine, arising from the same conduct that underlay his state charges.  Id. at 5.  Count IV charged Leyden with

---

[3] Citations to "Doc. No. __" refer to documents appearing on the court's electronic docketing system ("ECF"); pincites are to the page numbers in the ECF header.

distribution of and possession with intent to distribute methamphetamine, again stemming from the same conduct that gave rise to his state charges. Id. at 6.

The federal case proceeded before this Court. Attorney Malcolm appeared on behalf of Tam, while Attorneys Charles Rankin and Carlos Jorge Dominguez represented Vuong and Leyden, respectively. Doc. No. 13; Doc. No. 19; Doc. No. 20. Initially, no party brought Attorney Malcolm's prior representation of Vuong or his then-ongoing representation of Leyden to the Court's attention. Over one year into the case, the government raised the issue. Doc. No. 231. The Court held a hearing on the matter, see Doc. No. 252; Doc. No. 694, and, on February 27, 2023, disqualified Attorney Malcolm from representing Tam in the federal case, Doc. No. 253.

During subsequent sentencing proceedings, the Court grew further concerned about Attorney Malcolm's prior conduct in representing Tam based upon information submitted on Tam's behalf by his newly appointed attorney. The Court therefore undertook to screen the allegations of ethical misconduct by Attorney Malcolm for potential referral for disciplinary proceedings, pursuant to the District's Local Rules. The Court first solicited from the government and Tam additional information regarding Attorney Malcolm's conduct, which both provided. Doc. No. 650; Doc. No. 653; Doc. Nos. 653-1 to -10; Doc. No. 657. Next, the Court gave Attorney Malcolm the opportunity to respond to the allegations in writing, which he did in two separate responses, albeit belatedly. Doc. No. 673; Doc. No. 687; Doc. No. 690; Doc. No. 712. Finally, the Court held two show-cause hearings on the potential referral, at which Attorney Malcolm had additional opportunities to address his alleged misconduct. Doc. No. 704; Doc. No. 713; Doc. No. 714; Doc. No. 724.

II.    LEGAL STANDARD

Under the Code of Conduct for United States Judges, "[a] judge should take appropriate action upon receipt of reliable information indicating the likelihood . . . that a lawyer violated applicable rules of professional conduct."  Code of Conduct for U.S. Judges Canon 3(B)(6) (Jud. Conf. of the U.S. 2019).[4]  In the District of Massachusetts, a complaint of attorney misconduct is to be "screened in the first instance by the judicial officer who presided over the case."  L.R. 83.6.5(b).  Upon a finding that the allegations are "reasonably plausible and potentially serious," that judicial officer should refer the matter to the presiding judge for de novo review and a determination of whether the alleged misconduct warrants discipline or referral to other authorities.  L.R. 83.6.5(b), (d), (e).

III.    DISCUSSION

A.    Duty of Confidentiality

The Court finds that it is reasonably plausible that Attorney Malcolm committed a potentially serious violation of the duty of confidentiality.  The Massachusetts Rules prohibit a lawyer from revealing "confidential information relating to the representation of a client" unless "the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by" Rule 1.6(b).  RPC 1.6(a).  Similarly, "a lawyer shall not use confidential information relating to the representation of a client to the disadvantage of the client or for the lawyer's advantage or the advantage of a third person, unless the client gives informed consent, except as permitted or required by these Rules."  RPC 1.8(b); see also RPC 1.9(c) (extending both duties to former clients).  "Confidential information" includes

---

[4] This Court's Local Rule 83.6.1 requires attorneys appearing in the District of Massachusetts to comply with the Massachusetts Rules, as set forth in Rule 3:07 of the Massachusetts Supreme Judicial Court.  Local Rule 83.6.3 provides that a violation of the Massachusetts Rules is misconduct for which an attorney "may be disciplined."

"information gained during or relating to the representation of a client, whatever its source, that is (i) protected by the attorney-client privilege, (ii) likely to be embarrassing or detrimental to the client if disclosed, or (iii) information that the lawyer has agreed to keep confidential." RPC 1.6(a). The Court considers first whether Attorney Malcolm revealed or used confidential information relating to the representation of a client and then, if so, whether Attorney Malcolm obtained informed consent from the affected client before doing so.







B.   Conflicts of Interest

The Court also finds that it is reasonably plausible that Attorney Malcolm committed potentially serious violations of the Massachusetts Rules regarding conflicts of interest.  The

8

Rules identify several boundaries that limit a lawyer's ability to ethically represent multiple clients with different interests.  See RPC 1.7(a); RPC 1.8(b), (f); RPC 1.9(a), (c).  Here, the record raises sufficient concerns with respect to conflicts of interest on two fronts: (1) Attorney Malcolm's duties to Vuong as his former client while representing Tam in the federal case; and (2) Attorney Malcolm's duties to Tam as his current client in the federal case.

        1.   *Former Clients*

It is reasonably plausible that Attorney Malcolm violated his duties to Vuong as a former client by failing to adequately cure the conflicts of interest inherent to his representation of Tam.[7]  Under Massachusetts Rule 1.9, "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client."  RPC 1.9(a).  However, even where such a conflict exists between a current client and a former client, the conflict may be waived if the former client gives "informed consent, confirmed in writing." Id.; see also RPC 1.0(d), (g) (defining "confirmed in writing" and "informed consent").  The Court therefore considers, first, whether a conflict existed with respect to Attorney Malcolm's current client Tam and former client Vuong and then, if so, whether Attorney Malcolm obtained Vuong's informed, written consent to nevertheless proceed with his representation of Tam.

Conflicts of interest between Tam and Vuong plausibly existed.  Attorney Malcolm represented Vuong on controlled-substance and firearms charges in state court for over a year, from September 2020 until at least November 2021.  During that period, he appeared on Vuong's behalf on at least eight occasions, Doc. No. 243 at 2; Doc. No. 243-1 at 7–10; Doc. No. 243-3 at

---

[7] Leyden did not object to Attorney Malcolm's continued representation of Tam during the disqualification proceedings.  As such, the Court does not address whether any conflicts arising from Attorney Malcolm's representation of Leyden were waivable and, if so, whether Attorney Malcolm obtained the informed consent required for waiver.

2–3, and learned substantive, personal information about Vuong, including about his drug use, his finances, and the circumstances of his arrest. Doc. No. 243 at 8; see also Doc. No. 243-2. Those state charges arose from conduct that was discovered as part of the investigation underlying the federal case. That conduct also formed the basis for at least one of the charges brought against Vuong in the federal case. Attorney Malcolm then went on to represent Tam in that same federal case only a few weeks after his last appearance in Vuong's state case. Put simply, Attorney Malcolm represented Vuong in one matter then represented Tam in a substantially similar matter.

It is also entirely plausible that the interests of Vuong and Tam would be materially adverse in this case. Attorney Malcolm conceded in the disqualification hearing that all elements of a conflict under Rule 1.9(a) were present except for material adversity. Doc. No. 694 at 13, 15, 25. But, given the facts of the case, it is entirely plausible that Tam or Vuong—or both—would pursue a defense that attempted to cast blame on the other. Such a defense would then create material adversity between Attorney Malcom's current and former clients, giving rise to a conflict of interest.

---

[8]







Attorney Malcolm did not obtain the requisite informed, written consent though.

Attorney Malcolm does not claim that he ever received written consent from Vuong.  Doc. No.

694 at 13; Doc. No. 704 at 34–35; Doc. No. 713 at 33. He does assert that he received Vuong's oral consent to his representation of Tam in December 2021. Doc. No. 712 at 2. Even this assertion, though, is dubious. Attorney Malcolm never mentioned oral consent during the disqualification proceedings. See, e.g., Doc. No. 236 at 2 (claiming that there was no conflict and making no mention of consent); Doc. No. 694 at 13 (admitting that he did not receive written consent and making no mention of oral consent). In his first response to the Court's show-cause order, Attorney Malcolm stated, "I do not believe there was an actual conflict in my legal representation that I was aware of." Doc. No. 690 at 5. He then went on to identify several instances of a "potential conflict," in each case averring that the relevant clients had consented to the potential conflict." Id. at 5–7. It was not until the Court's first show-cause hearing that Attorney Malcolm clearly asserted that he had a conversation with Vuong around the time of Tam's federal indictment, explained the conflict issues, and received consent to continue representing Tam. Doc. No. 713 at 32–34. Finally, in his second response to the Court's show-cause order, Attorney Malcolm provided a date of December 14, 2021, for this supposed consent conversation. Doc. No. 712 at 6. This history of equivocation and inconsistency makes the Court doubt that any such consent conversation ever occurred.

It is also dubious that Attorney Malcolm could have obtained informed consent when he did not even recognize the conflicts inherent to his representation of Tam. See RPC 1.0(g) (defining "informed consent" as requiring that "the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct").[10] After all, Tam's entire written response to the government's

---

[10]

13

disqualification motion, other than complaining about the timing of the filing by the government, was this:

> The attorney relationship in State Court does not and did not create the use of or gain special knowledge or information obtained during the attorney client relationship that would help or hurt any of the parties in this prosecution. The defenses of each individual do not create antagonistic defenses, but rather separate distinct defenses for themselves in this prosecution in Federal Court.

Doc. No. 236 at 2. At the disqualification proceeding, Malcolm further contended that: (1) he gained no confidential information while representing Vuong, Doc. No. 694 at 12; (2) even if he had gained confidential information about Vuong, Vuong's interests were not materially adverse to Tam's because they would not seek to cast blame for the charges on each other, id. at 10, 12–13; and (3) even if he had gained confidential information about Vuong and Vuong were to testify against Tam, he could cross-examine Vuong so long as he did not use any confidential information against Vuong, id. at 18. It is unlikely that Attorney Malcolm could have explained to Vuong the risks of a conflict of interest which Attorney Malcolm did not believe existed.



██████████████████████████   On the record before the Court, Attorney Malcolm failed to obtain the informed, written consent of Vuong before representing Tam and, as such, plausibly breached his ethical duties to Vuong.

  2. *Current Clients*

  The record plausibly supports the conclusion that Attorney Malcolm violated his duties to Tam in light of his prior (or even concurrent) representation of Vuong and Leyden.  Under the Massachusetts Rules, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."  RPC 1.7(a).  Such a conflict exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person."  RPC 1.7(a)(2).  The "critical questions" in analyzing a potential material-limitation conflict involve "the likelihood that a difference in interests will eventuate" and, if so, "whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."  RPC 1.7 cmt. 8.  However, even if a conflict exists, the representation may proceed if "each affected client gives informed consent, confirmed in writing."  RPC 1.7(b)(4).[12]  The Court must therefore determine, first, whether a concurrent conflict of interest arose in Attorney Malcolm's representation of Tam and, second, if so, whether Attorney Malcolm obtained informed consent, confirmed in writing, from Tam and any other affected client.

---

[12] In addition to the client's consent, the Rules also require that "the lawyer reasonably believe[] that the lawyer will be able to provide competent and diligent representation to each affected client," "the representation is not prohibited by law," and "the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal."  RPC 1.7(b)(1), (2), (3).  If any of these conditions is not met, the conflict is unwaivable even with informed consent.

First, Attorney Malcolm's representation of Tam plausibly involved one or more concurrent conflicts of interest due to a significant and obvious risk that said representation would be materially limited by Attorney Malcolm's responsibilities to Vuong and Leyden. Here, the likelihood that the interests of Tam, on the one hand, and Vuong or Leyden, on the other, would diverge was high. Attorney Malcolm had represented Vuong and Leyden in related state matters arising out of the same federal investigation and the same conduct that led to the federal charges against Tam, Vuong, and Leyden. See RPC 1.7 cmt. 23 ("[O]rdinarily, a lawyer should decline to represent . . . more than one person under investigation by law enforcement authorities for the same transaction or series of transactions . . . .").

Once Tam, Vuong, and Leyden were indicted as co-defendants in the federal case, conflict became especially likely. See RPC 1.7 cmt. 23 ("The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant . . . .").

This was not the rare case in which co-defendants' interests neatly aligned. For example, it was entirely plausible that Tam would blame Vuong by contending that he was only a drug user allowing his work address (Midas) to be used by others—or that Vuong would similarly seek to blame Tam for the methamphetamine found in his car on September 10, 2020.[13] At that

---

13

point, the interests of Tam and Vuong would diverge. Even more importantly, if Vuong testified, Attorney Malcolm, on cross-examination, would face a further conflict between his duties of diligence to his current client and his duty of confidentiality to his former client. See RPC 1.3, 1.6(a), 1.9(c). That is, Attorney Malcolm's duty to Vuong (his former client) could materially interfere with his independent professional judgment in carrying out the cross-examination on behalf of Tam (his current client). An actual conflict of interest—or multiple—therefore plausibly existed.[14]

Second, assuming the conflicts were waivable,[15] the record suggests Attorney Malcolm did not obtain informed, written consent from Tam. Attorney Malcolm conceded during the disqualification hearing that he never obtained written consent from Tam. Doc. No. 694 at 13. While Attorney Malcolm later claimed during the disciplinary-referral screening process that he had obtained oral consent from Tam, Doc. No. 712 at 1–2, he did not mention that oral consent at any point during the disqualification proceedings. See infra Section III.D (doubting the veracity of Attorney Malcolm's statements regarding oral consent). Attorney Malcolm also confirmed

---

[14]



[15] There is some question as to whether, under the circumstances, Attorney Malcolm could reasonably have concluded that he could provide competent and diligent representation to Tam.

17

during the screening process that, even if he did obtain oral consent, he never got it in writing.

Doc. No. 713 at 34–35.

Even if Tam did consent, it is doubtful that such consent was "informed." As explained in

Section III.B.1, <u>supra</u>, given that Attorney Malcolm did not believe that any conflict existed,

Doc. No. 231 at 2; Doc. No. 253 at 4; Doc. No. 690 at 5–7, it is difficult to imagine that he could

have provided Tam with adequate information about the risks inherent in that conflict.  Without

informed, written consent, Attorney Malcolm's representation of Tam violated the duties

Attorney Malcolm owed to Tam as a current client in the face of a conflict of interest.

    C.   <u>Handling of Fees</u>

Attorney Malcolm's handling of fees in his representation of Tam and Vuong constitutes

another reasonably plausible and potentially serious ethical violation.  Massachusetts Rule 1.8(f)

prohibits a lawyer from accepting payment from a third party unless: (1) "the client gives

informed consent"; (2) "there is no interference with the lawyer's independence of professional

judgment or with the client-lawyer relationship"; and (3) "information relating to the

representation of a client is protected as required by Rule 1.6," which pertains to confidentiality

of information.  RPC 1.8(f); <u>see also</u> RPC 5.4(c) (prohibiting a lawyer from allowing a third-

party payor to "direct or regulate the lawyer's professional judgment in rendering such legal

services").  These requirements are supplemented by Rule 1.7 when the fee arrangement creates

a conflict of interest, "for example, when the third-party payor is a co-client."  RPC 1.8 cmt. 15.

In this case, the allegations regarding Attorney Malcolm's handling of fees suggest that

he may have failed as to all three requirements of Rule 1.8(f).  At least in Vuong's state case,

Attorney Malcolm accepted payment of Vuong's legal fees from Tam and potentially members

of Vuong's family.  Doc. No. 231-2 at 3–4, 8; Doc. No. 657 at 4.  As to the first requirement of

Rule 1.8(f), informed consent, the Court finds it unlikely that Attorney Malcolm obtained such

consent from Vuong for the same reasons that it finds it unlikely that Attorney Malcolm obtained

such consent with regard to the conflicts of interest inherent to his multiple representation.  See

supra Section III.B.1; see also infra Section III.D (finding that Attorney Malcolm may have been

dishonest with the Court regarding his obtaining oral consent from Vuong and others).  As to the

second requirement, a lack of interference, the record reflects that, during much of 2021,

Attorney Malcolm was representing both Vuong and Tam, who contributed to Vuong's legal

fees.  Vuong and Tam were part of the same "team," according to Attorney Malcolm.  Doc. No.

713 at 60.  This series of facts raises real uncertainty as to Attorney Malcolm's independence

from Tam in representing Vuong.[16]  As to the third requirement, confidentiality, the Court has

already noted the concerning allegations regarding Attorney Malcolm's disclosure of

confidential information relating to his representation of Vuong to Tam and the other third-party

payors.  See supra Section III.A.  The Court therefore finds sufficient facts to refer Attorney

Malcolm for a violation of Rule 1.8(f), as well.

        D.    Duty of Candor

     Attorney Malcolm plausibly breached his duty of candor to the Court.  Massachusetts

Rule 3.3(a) provides that a "lawyer shall not knowingly . . . make a false statement of fact or law

to a tribunal or fail to correct a false statement of material fact or law previously made to the

tribunal by the lawyer."  RPC 3.3(a)(1).[17]  "Knowingly" "denotes actual knowledge of the fact in

question," which "may be inferred from the circumstances."  RPC 1.0(h).  Under Rule 3.3(a)(1),

"a fact is material if, viewed objectively, it directly or circumstantially had a reasonable and

---

[16] ██████████████████████████████████████████████████

[17] This Court is a "tribunal" within the meaning of the Rules.  See RPC 1.0(r).

natural tendency to influence a judge's determination." In re Angwafo, 899 N.E.2d 778, 784 (Mass. 2009). However, "[i]t is not necessary to show that the statement of material fact did in fact influence a determination by the judge." Id. at 785. It is at least plausible, on the record now before the Court, that Attorney Malcolm knowingly made false statements of material fact to the Court regarding both the consent he obtained from and the fee letters he sent to Tam and Vuong.

First, Attorney Malcolm plausibly made such false statements when he repeatedly stated that he had received consent to his representation of Tam from Tam, Vuong, Leyden, and other affected former clients. In his initial response to the Court's show-cause order, Attorney Malcolm stated, "Mr. Tam and Mr. Vuong agreed to my continued representation of Mr. Tam in Federal Court in December 2021." Doc. No. 690 at 3; see also id. at 3–4 (making similar statements regarding Leyden). At the Court's first show-cause hearing, Attorney Malcolm initially conceded that he never obtained written consent from any of the affected clients, then claimed, "I had obtained consent. And I had written consent from Mr. Leyden."[18] Doc. No. 713 at 34–36. In his second response, Attorney Malcolm supplemented his claims by stating, for example:

> Mr. Tam and Mr. Vuong agreed to my continued representation of Mr. Tam in Federal Court in December 2021. I spoke with Harry Tam about conflicts on December 14, 2021 and December 15, 2021. I discussed the conflict issues, described and defined them, and asked about his desire to proceed. He made it clear he wanted me to proceed and the others were on board as well. I explained I spoke to them separately.

---

[18] Attorney Malcolm did correct this apparently false statement about Leyden's written consent in his second response. See Doc. No. 712 at 2–3 ("[I]t appears I did not obtain written consent as I do not have a signed copy in the file I retrieved."); see also RPC 3.3(a)(1) (imposing a duty to correct a false statement of material fact). However, Attorney Malcolm then recommitted to this statement at the second show-cause hearing, claiming, "I have a great memory of getting consent from Mr. Leyden. . . . Written consent, yes." Doc. No. 724 at 33.

Doc. No. 712 at 2.[19]

In light of the foregoing proceedings, these statements appear both material and false. They were material because the issue of consent was at the crux of the Court's screening process. See Doc. No. 673 at 3–4 (raising the issue of consent and instructing Attorney Malcolm to respond to five questions on the subject). And they were plausibly false given the record before the Court. Attorney Malcolm has provided no evidence of consent from Tam, Vuong, Leyden, or others, and especially not of the written consent he claims Leyden provided.[20] Indeed, at the disqualification hearing, Attorney Malcolm conceded that he never received informed consent in writing from Vuong. Doc. No. 694 at 13. He never claimed during the disqualification proceedings that he had received any client's oral consent, and he never objected to the Court's statements in its disqualification order to the effect that he had not obtained consent. Doc. No. 253 at 4. Instead, Attorney Malcolm essentially denied that any conflict existed. Doc. No. 236 at 2; Doc. No. 694 at 13. If Attorney Malcolm believed that no such conflict existed, then there would be no reason for him to seek his clients' consent, so it is at least doubtful that Attorney Malcolm did so as he now claims. Even if he did, the Court is skeptical that Attorney Malcolm had the fulsome discussions with clients that he claims, given that he believed he could go so far

---

[19] This supplemental information seems directly responsive to several of the Court's pointed questions at the first show-cause hearing, rather than being spontaneous additions. See, e.g., Doc. No. 713 at 32 (asking Attorney Malcolm whether he talked to the clients together or separately). Additionally, Attorney Malcolm's phrasing suggests that Tam conveyed to him that "the others were on board." Doc. No. 712 at 2. This further supports the Court's concerns about Attorney Malcolm's lack of independence from Tam. See supra Section III.C.

[20] The Court acknowledges that it has not heard directly from the clients on the issue of consent.

as to cross-examine Vuong in the federal case without raising a conflict issue. See supra Section III.B.1.

Second, Attorney Malcolm also plausibly made false statements when he provided the Court with what he claims to be the fee letters he sent to Tam, Vuong, and Leyden. Attorney Malcolm produced these fee letters on August 28, 2024, almost three months after first being ordered to do so and over one month after the Court's second show-cause hearing. Doc. No. 725. Several aspects of these letters make the Court doubt their authenticity.

The long delay in Attorney Malcolm's production of the letters raises some doubt. The Court first directed Attorney Malcolm to produce his fee letters and contracts with Tam, Vuong, and Leyden on May 29, 2024. Doc. No. 673. Attorney Malcolm did not respond for over a month. When he did respond, on July 2, Attorney Malcolm objected to producing the fee letters and contracts but did not provide a reasoned argument for his objection. Doc. No. 690 at 9–10. In response, the Court directed Attorney Malcolm to either produce the fee letters and contracts by July 11 or support his objection with reasoned argument. Doc. No. 692 at 1–2. Attorney Malcolm did neither. The Court's Deputy Clerk emailed Attorney Malcolm on July 12, and Attorney Malcolm stated that he would submit a filing by July 15, the day before the Court's first show-cause hearing. Doc. No. 713 at 22–23. Attorney Malcolm did not make that filing, either. Instead, at the Court's first show-cause hearing on July 16, Attorney Malcolm explained that he had been unable to access the requested documents because those documents were in storage and that he "just need[ed] another few days to get them out." Doc. No. 713 at 11.[21] The Court ultimately ordered Attorney Malcolm to produce the fee letters for Tam, Vuong, and Leyden by

---

[21] Attorney Malcolm conceded that he did not have the client contracts but was willing to produce the fee letters. Doc. No. 713 at 37.

July 23.  Id. at 37.  Again, Attorney Malcolm did not comply with the Court's order.  Instead, on July 24, a day late, Attorney Malcolm made a filing in which he committed to providing "all fee engagement letters" to the Court during the second show-cause hearing scheduled for later that day.  Doc. No. 712 at 11–12.  Attorney Malcolm did not provide the requested fee letters at that hearing, either, again citing trouble with storage.  It took another month for Attorney Malcolm to produce the letters.  These long delays contribute to the Court's concerns about the authenticity of the letters he ultimately produced.

Additionally, example fee letters that Attorney Malcolm produced in the second show-cause hearing enhance the Court's skepticism.  Attorney Malcolm provided two fee letters from other clients—marked as Exhibits 1 and 2 during the second show-cause hearing—which he avowed were "similar" to those he used for Tam, Vuong, and Leyden.  Doc. No. 724 at 7, 24.  Exhibit 2, a fee letter dated July 19, 2021, read, in part, "should you choose to cooperate with the Government, I reserve the right to withdraw my appearance as counsel . . . .  I shall retain the funds paid to date as earned."  Id. at 22–23.  The Court expressed concern that such language implies that the client forfeits all funds paid to date if the client chooses to cooperate.  Id. at 23.  When pressed, Attorney Malcolm argued first that the fee letters were not binding contracts, then that forfeiture was "not an ethical issue" because "[t]hey don't pay a fee up front. So as they pay as they go, usually it is pretty close."  Id. at 23, 25.  Eventually, Attorney Malcolm affirmed that the Vuong fee letter would contain a similar provision regarding cooperation and would "say the fees are either earned or we'll provide an accounting to show that they're earned."  Id. at 25.  The Tam, Vuong, and Leyden letters Attorney Malcolm later produced deviate from the example fee letters in ways that seem responsive to the Court's expressed concerns.  The fee letter for Vuong, for example, states:

> [E]very Defendant has the right to try to pursue a Cooperation Agreement or some type of cooperation with/for the State Government and/or Federal Government and actually cooperate to seek to secure a more favorable position when resolving a case by taking a plea deal or making admissions. Should you wish to pursue this course of action, I will make the necessary arrangements for you to limit public access to the process and info, but then I reserve the right to seek to withdraw as your attorney as this will cause a breakdown in the attorney/client relationship. . . . I will keep any monies paid that were earned to date, and I will provide an accounting for your case that shows the actual hours accrued during this representation.

Doc. No. 725 at 2. This softening of language regarding cooperation with law enforcement and the resultant handling of fees adds somewhat to the impression that these letters might not be what Attorney Malcolm claims.

The dating of the Vuong fee letter is also suspicious. The Vuong fee letter is dated September 25, 2020. The letter begins "Dear Mr. Vuong: It was a pleasure to conference with you." Doc. No. 725 at 1. However, the recorded phone call between Tam and Vuong in which Vuong first learned that Tam had hired Attorney Malcolm to represent Vuong did not occur until September 26, 2020. Doc. No. 231-2 at 3–4, 8. Vuong's responses to Tam on that call make plain that he had not conferenced with Malcolm the previous day. While this dating alone is perhaps not enough to raise the Court's suspicions, it does add to the Court's concerns.

Finally, the Tam fee letter includes language about consenting to conflicts of interest that plausibly rings false. Specifically, the letter states that Attorney Malcolm engaged in "sufficient review and discussion of the potential conflict issues" and obtained "consent to my representation of you in Federal Court having represented Mr. Leyden and Mr. Vuong in State Court." Id. at 8. Attorney Malcolm never—either during the disqualification proceedings or during the Court's disciplinary-referral screening process—mentioned that the Tam fee letter contained such terms regarding consent to the conflict issues. The appearance of this language in the Tam letter at such a late stage in the process makes the Court not only doubt that such

24

"review and discussion" happened but also that this is indeed the original fee letter provided to Tam. Together, these circumstances support a plausible inference that the fee letters are not what they claim to be and that Attorney Malcolm has committed a serious ethical violation as a result.

>     E.     Attorney Malcolm's Recent Behavior

Finally, the Court notes with concern Attorney Malcolm's recent behavior across his cases in this District. While this behavior does not form the basis for the Court's referral, it does suggest a broader failure to attend to his responsibilities to the Court to his clients.

Throughout the Court's screening process, Attorney Malcolm:

- Failed to timely respond to the Court's first show-cause order, dated May 29, 2024. Doc. No. 673. That order required Attorney Malcolm's response within fourteen days, but Attorney Malcolm failed to respond for over a month.

- Failed to promptly notify the Clerk's Office of a change in address, as required by Local Rule 83.5.6(a). See Doc. No. 687 at 2–3; Doc. No. 690 at 2.

- Objected to the Court's entire disciplinary-referral screening process, citing attorney-client privilege, while failing to provide any reasoned argument to support that objection. Doc. No. 690 at 2.

- Objected to the Court's order that he provide client fee letters, again without providing any reasoned argument to support the objection. Doc. No. 690 at 9–10.

- Failed continually to meet deadlines to produce the client fee letters, despite repeatedly assuring the Court that he would do so and that he had remedied the administrative issues within his office that he claimed had contributed to such failures. Doc. No. 713 at 24; Doc. No. 724 at 5–7; Doc. No. 725.

In two other recent matters in this District, Attorney Malcolm failed to follow court orders and potentially breached his duty of diligence to his clients.  See RPC 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client."); see also RPC 1.3 cmt 3.  In the first matter, Attorney Malcolm repeatedly failed to appear or otherwise discharge his duties.  See United States v. Florentino, No. 22-cr-10166-PBS-1 (D. Mass.), ECF Nos. 66, 86, 94.  In the second matter, Attorney Malcolm engaged in similarly disconcerting conduct.  See United States v. Cannon-Grant, No. 22-cr-10057-AK-1 (D. Mass.), ECF Nos. 137, 155, 158, 161.

To be clear, Attorney Malcolm appeared apologetic throughout this Court's disciplinary-referral screening process and cited several personal complications.  At the Court's first show-cause hearing, Attorney Malcolm admitted that he had "made many, many mistakes over the last year and a half" related to "work/life balance."  Doc. No. 713 at 27–28.  ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Attorney Malcolm also cited difficulty adjusting to working from home during the COVID pandemic.  Doc. No. 724 at 52.  Still, Attorney Malcolm told the Court that he was making efforts to improve his legal practice.  ████████████████████████████████████

████████████████████████████████████████████████  He also claimed he had begun to "revamp" his practice, including by hiring a legal assistant and a paralegal on or around July 1, 2024.  Doc. No. 713 at 27–28; Doc. No. 724 at 10–11.  However, he did not utilize their help in preparing for the screening process and continued to miss deadlines even after hiring them.  Doc. No. 724 at 11.

Attorney Malcolm's behavior is especially disconcerting given the cases he handles.  In

each case referenced herein, Attorney Malcom represented a defendant in criminal proceedings. It was not just his clients' interests, confidences, and legal fees at stake. It was their liberty. There can scarcely be a more serious duty for an attorney than to provide an individual charged with a criminal offense with the competent, diligent, and zealous assistance of counsel to which that individual is entitled. That individual depends on it, and our legal system depends on it. The Court does not make this present referral lightly.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court finds it reasonably plausible that Attorney Malcolm has committed the following potentially serious ethical violations: (1) breaches of Massachusetts Rules 1.7 and 1.9 regarding conflicts of interest; (2) breach of the duty of confidentiality under Massachusetts Rule 1.6; (3) breach of Rule 1.8(f) regarding acceptance of the payment of client fees from a third party; and (4) breach of the duty of candor to the tribunal under Rule 3.3. As such, the Court hereby refers Attorney Malcolm for disciplinary proceedings pursuant to Local Rule 83.6.5.

SO ORDERED.

 /s/ Leo T. Sorokin
United States District Judge